Hold on just a moment, I'm just trying to give everyone a chance to exit. Alright, you may proceed. Thank you, Your Honor. May it please the Court, the question presented by this case is whether expenses that a policyholder incurs voluntarily to mitigate the impact of a covered business interruption may ever be incurred solely as a result of the interruption. If so, the summary judgment here was improper. Ordinarily, questions of sole causation are matters of fact for the fact finder. Liberty persuaded the District Court here to take the issue away from the jury by ruling that voluntary mitigation expenses can never be incurred solely as a result of a system failure because the policyholder's business judgment is always a concurring cause. That summary judgment is erroneous and should be reversed for two principal reasons. The policy text and the best analogy to prior precedent. Mindful of the fact that we're the last case of the day and the last case of the docket, I'm going to start with what I think is the simplest way to answer the case, and that is comparing the question here to this Court's existing precedent. Because as we say in the briefs, this kind of coverage is relatively new and there are no decisions that are squarely on point construing this policy language, which is why the brief begins with the textual analysis. But it is helpful to analogize to similar policy language, and the best and most recent authority from this Court supports Southwest. That is the decision by Judge Jolly in Wells v. Minnesota Life Insurance. In that case, the panel in an opinion authored by Judge Jolly held that in construing policy language that required sole cause with respect to an accidental bodily injury or death policy, a contributing cause of an injury that, quote, arises directly from, solely because of, and dependent upon a covered cause does not necessarily sever the sole cause link. And the court there held that the evidence in that case presented a fact issue for the jury. Now, Wells involved a situation in which a gentleman was bitten by a mosquito. The mosquito infected him with West Nile virus, and that led to medical complications that ultimately resulted in his death. The policy required that the accidental injury, which was the mosquito bite, be the sole cause of death, and the carrier denied coverage because of the subsequent medical complications that ultimately resulted in death. But this court, looking to the Texas Supreme Court's decision in Mutual Benefit v. Hudman, recognized that where you have prior concurring causes that lead to the accidental injury that ultimately results in death, coverage is foreclosed. But when an accidental injury results in events subsequently that cascade into the ultimate injury, the death, sole cause is not necessarily severed. And we have evidence comparable to that here. What Judge Jolly said in Wells is the court was not taking sides on whether those subsequent events were, in fact, intervening causes that prevented the original injury from being a sole cause. It was a question for the fact finder because there was evidence that those subsequent conditions manifested directly as a result of the injury. And we have similar testimony in this case. I've provided to the court bench exhibits. I'm not going to go through them in chapter and verse, but I thought it would be useful for you to have them at your fingertips. There are the key testimony of the Southwest decision makers that affirm that every one of these customer compensation decisions was undertaken solely because of the system failure. And so all you need do here is analogize this case to Wells and it's a simple basis for reversal. Judge Higginson, it looks like you have a question. What's the most helpful precedent in the business mitigation context? Your Honor, I don't think either of the parties has found any case in the precise context of business interruption insurance that deals with this problem. That is the world we're in. That is the world we're in. Why wouldn't it be vital, and I agree with you, the district court did virtually no factual or legal analysis, but I'm not sure that necessarily means there's a fact issue as to each category of costs. So the harder ones for me, for example, are, what is it, the fare saver, where Southwest made the determination that its gesture of goodwill would include friends. Those were people who didn't even travel. How is there any nexus to the system failure for the friends who can now start traveling? The nexus, Your Honor, is fact-bound because of the way in which the Southwest booking system works and the way in which Southwest determined to compensate the customers. Those fare saver promo codes are, by the nature of the Southwest booking system, linked to a booking number. They link to an individual booking number, and the Southwest system allows a booking to make reservations for up to eight passengers. So it's not the case that Southwest made a deliberate decision to say we're extending a benefit to up to eight passengers. It passed on close to $16 million to the insurer for people that weren't even traveling on the days that there was a system failure. Well, in fact, Your Honor, the record reflects that the actual usage of those benefits ultimately resulted in, I believe, 1.5 tickets per voucher or per promo code. Either way, it's difficult for me to see any nexus. And, Your Honor, I think what I would suggest there is that that's a very principled argument for liberty to make to the fact-finder to argue to the extent that that benefit exceeds actually what was necessary to compensate that passenger for loss, that that was not solely as a result of the system failure. But that's an issue of fact for the fact-finder to decide, and I don't think it's a matter of law question that the court could... Well, as a matter of law questions, you would agree that you couldn't get compensated for anything that goes beyond putting you to the place you were originally? Yes, I think that's... So let me put that in a fact-specific context. If, on the advertising issue, you lost a day of advertising, why would the insurer be paying for a full week of advertising? Because the company is having to make a judgment without perfect information in real time, and by the way, the record reflects, without even being aware that there was insurance coverage available, so this was not a situation where the company was using the insurance as a windfall. The company's having to make a determination about how best to mitigate the loss that is occurring, and the significant disruption in the Southwest reservation system, the significant adverse publicity from the event led to a determination that a one-week extension of that advertising campaign was necessary to mitigate the loss. A fact-finder may say that that was excessive and that only a certain percentage of that loss actually was encouraged solely as a result of the system failure. I think that's a perfectly principled argument, but I think it's an argument for a fact-finder to weigh. It's not one that a court can determine as a matter of law. Can I ask you a question about consequential damages? Yes, Your Honor. Outside... Forget about this particular insurance policy. I'm just asking a conceptual question. Would you agree that the type of damages that we're talking about that are at issue in this appeal are essentially consequential damages, are not the damages that Southwest directly suffered, but they're unquestionably downstream from the cyber failure? I think, Your Honor, there's... I want to answer this question directly, but I want to place my answer in context by saying there's a couple of different ways to look at the consequential damages at issue here. And so the parties have briefed this as if we're thinking about what are the consequential damages that flow from the policy, that is, to what extent is liberty liable for consequential... And I'm assuming when you're answering this that you and Judge Hoe already agree on what consequential damages are. Because unless there's some agreement, then I don't know how you could be answering when he says consequential damages. You agree with him, whatever he means when he says consequential damages? So let me try to say that to the extent that Southwest suffered this system failure and was seeking to recover damages for these costs from a third party, not in a contractual context, these would be losses that would be consequential losses, not direct losses. Because Southwest bargained for precisely this coverage. Within the context of this insurance policy, they are direct losses because it's a loss of the direct coverage of additional expenses for which Southwest bargained. So let's talk about the policy in a moment. I mean, literally in a few seconds. Right. But as a conceptual matter, it sounds like we agree. This is not Southwest having to pay to fix the cyber system. This is... It sounds like you're agreeing. This is a consequence... These are additional damages, yes. So then turning to the policy, there's obviously an express exclusion of consequential damages. Why would we not enforce that exclusion here? Because, Your Honor, the exclusion doesn't deal with consequential losses to Southwest, that is, business losses that are specifically contemplated in the policy. What the exclusion deals with is a liability that Southwest incurs to a third party because of a system failure that leads to an additional liability. And so I want to give an illustration because I think the parties are just sort of ships passing in the night in the briefing on this, and I think an illustration will help me make the point. If a business interruption caused Southwest to breach a contract of its own with one of its passengers and that passenger recovered consequential damages from Southwest, that would be excluded. So let me pick a hypothetical from the zeitgeist right now. If Taylor Swift goes to Kansas City to watch a football game and she has a ticket to come back to Dallas for a concert and Southwest doesn't get her back and she sues and recovers $10 million in lost profits for the failure to be able to make that concert, those damages are consequential damages that Southwest owes to Taylor Swift. That's excluded under this policy. I acknowledge that's excluded under this policy, but that's not at all what's going on here when you're dealing with direct mitigation expenses that Southwest bargained to cover. To get to the exclusion, you first got to conclude that it is a loss as a sole result, correct? Correct. So we've got to cross that threshold no matter what. We can't assume that and then say exclude. Well, I suppose I should be forthright, and the court could reach the exclusion issue without necessarily deciding the coverage issue. You could assume the existence of coverage and reach the exclusion, so there's not a necessary decisional path. But I do think it's logical to say if there is no coverage, then there's no need to consider the exclusion. Or put another way, for you to win, you have to prove both coverage and the absence of an exclusion. Yes, that's exactly right. So why do you read the exclusion for consequential damages to be limited to judgments against Southwest? Because, Your Honor, I think, number one, that is the most plain reading of the reference to consequential damages. The term damages has a known meaning in the law. It is an award of damages. It is not simply a cost that's incurred. And recall that you're doing this based on the word damages. In part. That's not the entire answer, but in part because it refers to consequential damages, which is something different than just a cost. The second is, remember that the insuring clause refers to loss that an insured incurs. And so the focus is on what is the loss to the insured Southwest. Consequential damages to Southwest are damages that Southwest incurs as a legal liability to some other party that is suing for damages and recovers consequential damages. And Judge Hoda sort of finished this answer. Any other interpretation would nullify whole categories of this coverage, because basically the way Liberty reads consequential damages is to say any loss that is indirect, any loss that is not the direct consequence of the system failure, is cut off by the consequential damages litigate. But if that is correct, that eliminates the coverage for net income that is lost when customers then fail to book, which is specifically covered. It eliminates the coverage for the... Why can't you give effect to both? I agree with you that it would be weird to read the consequential damages exclusion to nullify the net income, net profit coverage provision. I agree with you on that. But why can't we give effect to consequential damages exclusion outside of that provision, outside of net income, like this case? Liberty's given no coherent reason to limit its understanding of consequential damages to draw a line between some indirect losses and other indirect losses. Well, why not... I mean, that's what we do when we have provisions that potentially conflict. We try to give effect to both. I agree, but they haven't given you a way to do that. Their argument is... I've just given you one. Pardon? I've just given you one. I'm going to cover net income and net profit. All right? That's covered. No question that's covered. It would make that provision illusory to say... Right. ...well, that gives... consequential damages completely takes away. I give you that. Okay. But there are other consequential damages not covered by net income and non-profit that theoretically could be excluded. Otherwise, you're the one reading out the consequential damages exclusion. So I think in that scenario, you're then picking and choosing among categories of consequential damages in a way that I don't think the policy would permit. I'm not reading out the coverage. I'm acknowledging the coverage excludes consequential damages in the traditional sense of consequential damages. But if you accept the premise that certain categories of defined loss cannot be excluded by the consequential damages exclusion without rendering that coverage illusory, it necessarily has to have the same meaning with respect to the first category. Your time runs out to the covered refunds. Pardon, Your Honor? Why that to the covered refunds category? That category included what? Hotels before they could get on another flight? It included a variety of reimbursement requests from travelers who had to make alternative travel arrangements, and as a consequence of making those arrangements, approach Southwest and ask for reimbursement. So it's all still in the effort to get A to B? Yes, Your Honor, or to get a passenger home. But yes, that's correct. And under the liberty theory of consequential damages, all of that would be rendered illusory. And so what I respectfully suggest is it brings you back to the question of whether these are covered costs. If they are, as we say they are, they're entitled to the same dignity as every other covered loss, which means you can't read the consequential damages exclusion to nullify them. If the Court has no further questions... Let's go back to our discussion about damages meaning only judgments. First of all, what's your best case for the proposition that the word damages means a judgment as opposed to just damages that you, as an insurer, have suffered? Your Honor, I don't have a case at my fingertips for that proposition. I'm happy if the Court would like to look at a supplemental letter on it. Let me ask you then, let's look at the word damages as used elsewhere in the contract. There's a coverage provision, or at least a definition section, I assume, a coverage provision for property damage. I assume you're not saying that property damage is only about property lawsuits. No, Your Honor, but consequential damages is a term of art in the law. We're not stitching together two ordinary words and looking at them with a dictionary. I'm not sure it's a term of art that signifies judgments as opposed to... What you're essentially saying is consequential damages only means when Southwest is sued for somebody else's consequential damages. I take that to be your Taylor Swift hypothetical, but why not apply this to consequential damages that Southwest itself suffers? Well, Your Honor, I think that when you look at the language of the exclusion, I want to make sure that I am engaging directly with your point. I don't mean to say consequential damages is limited to judgments. I mean it is legal liabilities, a settlement in anticipation of a legal liability, I think, would still be subject to... I think what you're saying is consequential damages suffered by third parties other than Southwest, and that's what I'm not getting, is why is it... Well, when you read that consequential damages exclusion, the entire phrase, it refers to consequential damages that arise from or are aligned with a claim for consequential damages. So I read it... I don't see the word claim. Well, I don't have that language precisely in front of me, Your Honor, but I read that passage as a reference to third-party claims for consequential damages. If there are no other questions, I appreciate the court. May it please the court. My name is LaVon Hovnatanyan, and I represent the Appalee Liberty Insurance underwriters. Seems like the prudent thing to do is to start with consequential damages. And in that event, let's start... Very wise. At least for me. I may only get you one vote for all I know. Thank you, Your Honor. Let me start with the actual provision itself, which isn't very lengthy. The insurer shall not be liable to make payment for loss alleging, arising out of, based upon, or attributable to contractual penalties or consequential damages. Now, Mr. Post is correct. The policy does not define consequential damages. This Court's rules in determining the meaning of Texas insurance policies and the Texas Supreme Court's rules in determining the meaning of Texas insurance policies all say the same thing. When a policy doesn't define a term, the plain meaning applies. Happily, many courts have given us the plain meaning of consequential damages. I won't repeat them. They're literally listed in our brief. But they say the same thing. Consequential damages are losses. Losses that do not flow directly and immediately from an injurious act, but that result indirectly from the act. So that's the provision and that's the plain meaning. Flow from it, but not necessarily. Correct, Your Honor. Yes. Those are the case law you gave us. So just apply it to the categories here. Correct. How would the covered refunds not flow necessarily? You're still trying to get the passenger home or to their destination. Correct. And so let's put Taylor Swift back on a plane. If she wants to go see Travis Kelsey play in New York, but there's a system failure, and Southwest says, well, we're sorry about that. Here's your cover refund and now go see him play in Minnesota. Presuming that cover refund is a loss, it is a consequential damage because it didn't flow directly or immediately from the system failure. It flowed from Southwest deciding we need to compensate Taylor Swift. This is our fault and we need to compensate her. She wanted to go see Travis Kelsey play and because of us she couldn't. So we're going to give her a cover refund. We're going to pay for her alternative travel so she'll be made whole and she can go see him play in Minnesota. That's why it's a consequential damage. System failure means her flight, put aside Taylor Swift, just anyone's flight, all the hundreds of thousands of passengers. Correct. And then they're going to give you, they're going to put you on a different airline and get you there. You're saying that's a consequential? I'm saying if you presume it is a loss, and we certainly argue that's not a loss to begin with, but if it is a loss, yes, that's a consequential damage because it's not a loss that flowed directly and immediately from the system failure. It flowed indirectly. The intervening factor was Southwest's discretionary business decision to employ cover refunds. That's not something that they were legally obligated to do, not in the contract of carriage, not in the customer service plan. The only things they were legally obligated to do would be to put Ms. Swift or anybody on an alternative Southwest flight, give a refund, or give a credit. And a refund is not a credit refund. A refund is Southwest giving you money back that you spent with Southwest, whereas a cover refund is because the Southwest flight was canceled, you flew United. When Southwest reimburses you for that because it was their fault, that's a cover refund. And you would all agree that that's covered by the original coverage policy? Your Honor... The refunding... Well, the refund itself... I mean, I think the best answer, and unfortunately it's not the most definite one, was it depends. If it's required by the contract of carriage, then it's possible that it would be excluded by the liability to third parties' exclusion. That really isn't something that the parties have fully briefed. It's not really the issue, as I know you understand that. My point is... I'm not sure I do understand that. Okay. Passenger arrives to go. System failure, they can't go. Southwest says, okay, we've got a later flight, 6 a.m. in the morning. You're saying it's not a covered loss that then they pay for the hotel for that night? Or Southwest says, we'll fulfill our obligation, you'll get there, here's another airline, we'll cover that flight. Those aren't losses? Your Honor, under what you're saying, no. Well, they may be, but they're excluded. They're excluded because of the contractual liability to third parties' exclusion. So they are losses that you cover. Those are solely the result of. No, I don't think they're losses. I'm presuming that they are losses. I don't want you to presume anything. I have difficulty jumping right to the exclusion. So that isn't my focus. My focus is why wouldn't the covered refunds be solely the result? The nexus is inescapable to me. Because it was Southwest. It's a mitigation effort. Your Honor, because it was Southwest's discretionary decision, a business decision, to employ the cover refunds. But all mitigation efforts to reduce costs to your client are going to be business discretionary. Presumably that's true, but they're not losses. But you're not saying that mitigation efforts are excludable. Your Honor, mitigation efforts aren't covered to begin with because they're not losses. Mitigation is a duty. It's a duty that the insured has. Frequently that duty inures to the benefit of the insurer. But those mitigation efforts aren't covered losses. They're just not. Those expenses and those costs don't qualify as a loss. And we respectfully suggest that's one of the main differences between the five programs, the gestures of goodwill, and what actual losses are. Actual losses are not something you decide to incur. Actual losses are you had to pay a techie to fix the whole system, get it back on. Correct. That would certainly be covered. That is an actual loss. What else would be an actual loss? Or are you saying that's it? Oh, no, Your Honor, that's not it. Far from it. What else is it? OK, so net income is one of the categories of loss. What about in addition to the techie, the PR person to explain to the hundreds of thousands of stranded people what's happening? I think that's a closer call. Personally, I don't think that's a loss. That's something if Southwest decides we need to do this as a marketing and a customer service decision. Why wouldn't that be a cost that would not have been incurred but for material interruption? Right. Well, it would have been. Well, it was incurred in addition to the material interruption. I'm dying to hear what it does, Governor. You were starting that list. Sounds like it's going to be real short. Your Honor, I think the list is short, but the potential. Tell me what's on it. What's on the list is net income, continuing normal operating expenses. And I'm paraphrasing this because the definitions are lengthy. Cost to reroute or reschedule passenger travel, civil fines or civil penalties. And first, the one that's most important here, cost that would not have been incurred but for a material interruption. Now, that's qualified by the insuring agreement, which in fact comes before that, where the insuring agreement is where it says the loss must be solely as a result of a system failure. That's my problem with hiring the PR person. Boy, that's good business. That's shrewd. That's good business. But that's not solely because of the system failure. That's because of the system failure and Southwest's conceitedly intelligent decision but nonetheless unilateral and voluntary decision. If they had not had the system failure, they wouldn't have hired the PR person to explain that we have a system failure. That is true, and that's but for cause. And but for cause does not get Southwest into coverage because the insuring agreement says solely as a result of the system failure. There's not a huge... Your point, I think, tell me if this is a correct understanding. Certainly, Your Honor. This covers the cost of getting your system back online. Yes. It does not, either through this provision or the consequential damages or other things, it does not cover the downstream effects of having suffered this interruption. Yes. Whether it's PR or customer goodwill measures or whatnot. Yes. So it really is just the techie. Yes. I mean, I wish I had thought of the term downstream effects. That's a perfect way to put it. I'm trying to remember the language, though. I thought it contemplated, you know, cancellation costs 100 days out further. Your Honor, you're close. That comes under the continuing normal operating expenses. It's not just get it back online. Correct. I mean, there's temporal and there's mathematical limitations, but they apply specifically to continuing normal operating expenses. That's the 10% of the system failure sublimit and other conditions that aren't at issue in this appeal, frankly. But you're correct. There's temporal and there's mathematical limits, ceilings on those that the parties agreed to. That's the benefit of their bargain. I think you mean the below costs incurred within 120 days. 120 days, right. Correct. At the end of the material interruption or 120 days after it should have ended, although I'm paraphrasing that part. So, yes, there are some temporal and there are some mathematical limitations. You heard my questions to him. I'm skeptical about promotion fares to seven or three or even one other friend. Yes, Your Honor. I'm thinking of 400,000 passengers stranded and the whole purpose of the business interruption is they get to at least stay in the position they were in. They've got to take care of those passengers, get them to their destinations. Correct. That may mean hotel costs. That may mean rebooking on different flights. You're saying none of that's covered because it wasn't the sole cause? Well, Your Honor, I'm saying it's not covered because it's the sole cause, but two other things. Number one, what you're referring to are gestures of goodwill. Those are the five programs. Let me address your question with the purpose of business interruption insurance, which I'd like to borrow your paraphrase. It puts the insured in the place as if the system failure had never happened. Their own summary judgment evidence from Southwest personnel shows they only implemented the five programs because the system failure did happen. That's the opposite of what Couch says and both parties say in the breach. Well, system failure happens. They don't want to incur a lot of lawsuits by people who are stranded. Otherwise, they pass those on to you, so they're protecting the insurer. Well, actually, Your Honor, the Seventh Circuit addressed this in Hughes in 2020. This is a case that's discussed in our brief. In Hughes, Mr. Hughes had a flight canceled, and he sued Southwest, got all the way up to the Seventh Circuit, and the Seventh Circuit said, Mr. Hughes, you lose, and you lose because Southwest has contractual alternatives under the same contract of carriage that's at issue here by which they can fulfill their obligation to you. And those alternatives are three. They can put you on alternative Southwest flight. They can give you a refund. They can give you a credit. And all those costs, you would agree, are direct costs. I would not, Your Honor. I would not. But what I'm saying is... That's what the court's saying they would have to do. One of those three. Correct. ...necessary flowing from solely the fact that the plane didn't go because of the system failure. But here's the difference. There are two differences. Southwest is obligated under their contract of carriage to do it. Southwest was not obligated under the contract of carriage or otherwise for the fare saver promo, the vouchers, the cover refunds, the rapid rewards points, or to extend the advertising campaign. They had no legal obligation to do any of those things. But just so I understand precisely your position, you're saying what's not covered is not only the extra steps that they were offering but even the steps that they were required to take? Well, Your Honor, what I'm saying... I'm not saying you're right or wrong. Correct. Understood. I'm saying that if it's called for by the contract of carriage, then it could be, we didn't get that far in this case, but it could be excluded by the liability to third parties' exclusion. Now, Southwest's response is, oh, well, then you just negated the policy, you just rendered it illusory. But if that is a contractual obligation to a third party in the contract of carriage and it is negated by the liability to third parties' exclusion, isn't that the way the policy is supposed to work? This court told us in several cases, particularly in Columbia in 2007, the Texas Supreme Court told us in Lamar Holmes in 2008, that's the purpose of exclusions. To quote this court, they subtract from coverage. The way the Lamar Holmes court put it was, they narrow down the coverage. They remold and reshape the coverage. So it doesn't render the policy illusory because the third party liability exclusion excludes liability to a third party. That was the party's bargain. That's what the policy says. I'm guessing this is a policy you provide to a lot of insureds outside the airline industry, right? I believe that's true, Your Honor. There are all kinds of downstream, call it consequential damages, that occur that you assume will be excluded. Otherwise, it's a much bigger risk that you're carrying. Correct. This is essentially a foreign policy, correct? Southwest personnel testified. Law firm, I don't know if you do work with law firms, but a law firm that wants to protect against cyber risk, if they then have to do things to not lose the lawsuits for their clients, I assume you think that's excluded under the consequential damages. That's 100% correct. I'm a little outside the record in saying that, but you are 100% I'm just guessing you guys will just simply not cover this stuff before it imposes this obligation on you. Yes. And frankly, the parties agree on several points, one of which Southwest says, look, this is new coverage, right? This is a new policy. We're feeling our way along this. We agree. Mr. Post doesn't have a white horse case. Neither do I. This is a case essentially of first impression, which is why we were so glad the court called it for argument. There's no blueprint. We think the blueprint that this court needs, I beg your pardon, is the plain language of the policy. We don't think this case goes beyond solely as a result of. And so we think this case can be the first. I guess, why is it a first impression case? Why wouldn't this be relevant to almost any business? Hurricane comes in. They go buy a generator to keep the place cool, so there's not going to be mold that then they're going to try to get reimbursed for. The mitigation costs you wouldn't cover as a sole result the purchase of the generator? Your Honor, I'm sorry. I don't think I quite understand your question. You just have a business that's operating and then there's a covered occurrence. Right. And in order to mitigate costs because of the present predicament, such as to keep the place cool and dry rather than have mold, they buy a generator. Wouldn't that be, just starting at the beginning, wouldn't that be a covered loss? Analogizing, yes. It would be. But isn't that what Southwest, at least some of the categories, you heard my skepticism about getting a week of advertising instead of today that was that day that was interrupted or giving it to unaffected travelers. Correct. But as to the 400,000 travelers that had negotiated to fly somewhere but for the system event, taking care of them and getting them there, I may be just over simplistic, but the covered refund category seems to pretty much account for that. Well. Why am I wrong? Your Honor, well, respectfully. Yeah. No, I'm enlightening. Yeah, I don't frequently tell judges they're wrong. But respectfully, because the cover refunds would have to be solely as a result of the system failure. And here they're not. Can I interrupt? Please. When you both know this area and your arguments have been very helpful, but I thought I understood from the briefs the argument was they're trying to profit off this. They're looking to the future. The gestures of goodwill are just going to increase our profits. But that you wouldn't disagree that as to the people who were trying to travel that day, their efforts all are solely the result of the system failure. Well, Your Honor, we didn't argue in the brief they're trying to profit off this. OK. I thought the business judgment, they're making a voluntary business judgment. Correct. Extend a lot of generosities that you didn't want to pay for. Correct. I certainly agree with that. But I'm saying the district court didn't help much here with just a footnote of analysis, sweeping all five categories and the exclusions into even though we embraced your theory behind all that. Right. So I'm pushing back a little bit. All five categories can be either in or out. Sure. So specifically as to the cover refunds, although this would apply to the other four as well, the fulcrum is the fact that Southwest didn't have to do it. They weren't required to do it. They had no legal obligation to do it. They chose to do it. That's back to my generator example. And I'm not good with analogies. Not true. No, I'm not. But a business owner, you don't have to go buy a generator. Right. You could put a fan up. Right. But you're still trying to reduce the cost to the insurer. Right. Well, I just presumed for your analogy, and I think it's a good analogy, that whatever the generator, whatever the loss was, the generator was to keep things going. For instance, if you have a meat packing plant. Right. So you've got to have a generator because you've got to keep your temperature correct. In my opinion, that's a covered loss. That's a necessity. These weren't necessities. These were business decisions. But I'm saying they've got to get the 400,000 people where they need to go. That's a necessity. That's actually a necessity for the 400,000 people. It's not for Southwest. That's the Seventh Circuit opinion. That's why you cited the Seventh Circuit. Correct. So that's why I'm saying it's not a necessity for Southwest. And I see him now. Tom, may I? The line you're drawing is sort of along the lines of you're covering out-of-pocket costs. You're not covering benefit of the bargain value. That's, I think, a fair way to put it. Yes. Southwest takes steps to get the system back online. That's covered. That's covered. But if it's, gosh, by not having the system, we're suffering all these downstream goodwill and problems like that. Correct. That's not covered. That is not covered. And if I can just finish my answer real quick. What if Southwest, theoretically, could have waved a magic wand, paid some large amount of money, to have a whole separate fleet of airplanes to take all these people where they need to go, thereby complying with their obligations? Would that have been covered? Your Honor, the would the- Hypothetical, obviously. No, no, certainly. But you mean the cost- Well, it's sort of like the backup generator. They've got a backup fleet of planes that are just sitting somewhere. And for some reason, they're on another cyber system. So it's a backup system. It's total duplication. I mean- Can they charge you all the costs of maintaining that backup system? Off the cuff, no. I wouldn't say the cost of the planes. I would say, perhaps, the cost of the fuel. We already know things like, well, OK. The short answer is, not for the cost of the planes, but for the cost of the fuel and things like that. Because that's solely because of the system failure, I would say it's covered. It's sort of like a variable versus fixed. No, I was just going to say his timing is fine. But if you have another question- No. All right. Thank you, Your Honor. Rebuttal. So if I could follow up on my law firm hypo. Assuming a law firm is covered by this type of policy, you have a cyber failure, a draft complaint that's on the system you can't get to, statute of limitations, therefore expires, and now you're sued for a million dollars for malpractice. Do you think that's covered? That sounds to me like exactly what I think would be within the scope of the consequential damages exclusion. That would not be covered? That would not be covered because it would be consequential damages. Sorry? Because it would be consequential damages. Oh, okay. I guess that feeds into your Taylor Swift. That's exactly right, Your Honor. I'd like to begin by touching briefly on the coverage issue, and then I want to turn back to the exclusions issue. What about steps? Sorry to follow up. So forget that I drafted you the wrong hypothetical. What if it's the law firm taking steps? I'm trying to think of exactly what that hypothetical would look like. But to avoid losing their clients, they take them out on fancy trips to try to repair the Goodwill. The law firm here is customers of Southwest. I feel really badly about your lawsuit. It wasn't my fault. It was a cyber risk. But you know what? Let me take you to Tahiti. But the law firm in your hypothetical is Southwest customers who are unable to perform because of Southwest system failure. No, no. The law firm is Southwest. Okay. Because this policy is not an airline policy. It's any cyber risk for a client. So imagine the client is a law firm. So in that scenario, so if the law firm has to take actions to mitigate the loss— The CEO of the client is really upset that their lawsuit failed. You know what? Let me make it up to you. Let me take you to Tahiti. Your Honor, I think that— Thereby maintain the business. I think, Your Honor, that what that would provoke would be a factual dispute about whether that degree of mitigation is, in fact, solely as a result of the system failure as opposed to another motivation, which would be an issue for trial. And one of the— We're not taking that—we, the law firm, we're not taking that client to Tahiti but for the fact that we screwed up the lawsuit because of the cyber failure. I think it lines up with your high point. And the carrier? I have to say that that would be covered. And, of course, you're resisting because that sounds absurd. Your Honor, I'm trying to make this very direct point. If the carrier wants to argue that that was excessive, that that goes beyond actually being solely motivated, solely as a result of the system failure, this carrier has every right to make that argument to the fact finder and would have the right also to look to the other language in the policy that provides that in determining what are covered expenses, consideration must be given to the prior experience of an insurance business. So if the carrier says, you've never flown this client to Tahiti in the past, you did this only to capitalize on the insurance, that's a perfectly legitimate reason to defend against this claim. But they've never made that argument here because what Southwest did was consistent. Can you show that you had ever done this fare saver program that extended to friends? Yes, Your Honor. The record and, in fact, the affidavit that I provided to you in the bench exhibits from Mr. Ruppel establishes that these benefits are exactly the sorts of benefits that Southwest has historically used what it did in this instance was consistent with its historic practices and I think it's important to make the point that the record establishes the per passenger value of the benefit that Southwest provided was less than half of the benefit that Delta provided in a similar system failure just a few years earlier. And so . . . I think Chateau's hypothetical in the airline context would be what if a passenger is just given a lifetime travel, free amount of travel, I think there would be every reason for the carrier in that instance to say that goes beyond what was solely as a result of the system failure. There were other motivations and the fact finder would be entitled to differentiate from that. And if the carrier could say there is no historical record within your business of offering that kind of benefit, then the carrier could deny coverage outright under the separate coverage provision and that might be decided as a matter of law. Can I speak to one of the points that I think is being caught up here which is the theme of liberty that to the extent it's a voluntary decision, a business decision, it somehow cannot be a loss. Mr. Hodnotanian said he wanted the plain meaning of the policy and I wholeheartedly agree. The plain meaning of the word incurs is a loss that an individual brings down on itself and I want to point to the etymology, the actual Latin origin of the word incurs. It traces back to the Latin root carere which means to run. The word incur means to run into and as the dictionaries describe it, it is most often a self-inflicted negative consequence. That's what incurred is all about is a voluntary decision to incur a negative consequence. That's what this policy covered. That Seventh Circuit decision, do you want to speak to that? Your Honor, I think that Seventh Circuit decision is completely immaterial. That was an effort by a passenger to assert a contract claim against Southwest and the Seventh Circuit simply said there's no breach of the contract here because of the various ways Southwest can perform under the contract. This is not about legal obligations. The costs that are incurred that are covered by the First Definition of Loss are not limited to liabilities. They include decisions that a policyholder voluntarily chooses to incur solely as a result of the system failure. I appreciate the Court's time and attention. Thank you. Thank you, Counsel. The Court will take this matter under advisement. We are adjourned.